## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JESUS SANTIAGO JR.,

      Plaintiff,

vs.

NENO RESEARCH LLC,

      Defendant.

Case No.: 8:24-cv-01330

**JURY TRIAL DEMANDED**

## COMPLAINT

Jesus Santiago Jr. ("Plaintiff" or "Mr. Santiago") by and through his counsel brings the following Complaint against Neno Research LLC ("Defendant" or "Neno Research") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Turn Technologies, Inc. ("Turn Technologies") which falsely portrayed Plaintiff as a convicted felon for burglary and several other misdemeanors for offenses committed between October 2011 and April 2022.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers and/or third parties who then furnish to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Turn Technologies that Plaintiff was convicted of four (4) felony burglary charges; one (1) misdemeanor conspiracy to commit credit card theft; two (2) misdemeanors <500 on revoked credit card; one (1) misdemeanor of operating a vehicle under suspension; one (1) misdemeanor for criminal mischief; and one (1) misdemeanor for interfering with an officer/resisting arrest. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been charged with a crime in his life.

5.     Plaintiff's employer, Trash Butler, terminated Plaintiff after receiving an employment background check report from Turn Technologies. Defendant provided the background check report to Turn Technologies that included false criminal records about Plaintiff, which included the inaccurate four (4) felony convictions and six (6) misdemeanors, which ***do not*** belong to Plaintiff.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from New

Haven County, Connecticut regarding the felony and misdemeanor convictions prior to providing this information to Turn Technologies.

7.    Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name, suffix, date of birth and even reside in a different part of the country from Plaintiff.

8.    Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their employers with inaccurate criminal record information.

10.    Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background

check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

13.    Jesus Santiago Jr. ("Plaintiff" or "Mr. Santiago") is a natural person residing in Winter Haven, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.    Defendant Neno Research LLC ("Defendant" or "Neno Research") is a Delaware Limited Liability Corporation doing business throughout the United States, including the State of Florida and in this District, and can be served through its registered agent c/o Legalinc Corporate Services, Inc., 131 Continental Dr., Suite 305, Newark, DE 19713.

15.    Among other things, Defendant sells background checks to employers and data furnishers, like Turn Technologies, who incorporate the data Defendant provides in their background checks that they furnish to employers for their use in deciding whether to offer employment to prospective employees or to take adverse

4

action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer and/or data furnisher.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they

applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.     Dexter, a product of Defendant, even brags on its website that it does not have in-person review of criminal records, stating, "Dexter is an automated service designed for background check screening companies and consumer reporting agencies that want a streamlined process for criminal record checks that are free of human error and provide up to the minute results.[3]"

34.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019),
https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf
("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at
http://www.ibisworld.com/industry/background-check-services.html.
[3] https://www.dexterbd.com/

level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that

belong to an unrelated consumer who has a different middle name, suffix, date of birth and state of residence than Plaintiff.

40.    As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Trash Butler

41.    On or about August 11, 2022, Plaintiff applied for full-time employment with Trash Butler in Orlando, Florida.

42.    Upon applying to Trash Butler, Plaintiff successfully completed an interview and passed a drug test.

43.    On or about August 18, 2022, Trash Butler extended a job offer to Plaintiff for the position to which he applied.

44.    On or about August 22, 2022, Plaintiff began working with Trash Butler.

### Defendant Furnished Inaccurate Information to Turn Technologies who Published in a Background Check Report to Trash Butler

45.    Trash Butler contracted with Turn Technologies to conduct background checks. Upon information and belief, Turn Technologies then contracted with

Defendant to conduct the criminal background checks for the prospective employees.

46.     In or around October 2022, Trash Butler ordered a background check report from Turn Technologies who then ordered a criminal background check on Plaintiff from Defendant.

47.     On or about October 5, 2022, in accordance with its standard procedures, Defendant completed its criminal background check about Plaintiff and sold the same to Turn Technologies. Turn Technologies used Defendant's background check report in its employment report that it sold to Trash Butler.

48.     Within the employment report sold to Trash Butler, Turn Technologies used the background check report from Defendant that published inaccurate information about Plaintiff.

49.     Specifically, Defendant's background check report about Plaintiff included four (4) felony burglary charges; one (1) misdemeanor conspiracy to commit credit card theft; two (2) misdemeanors<500 on revoked credit card; one (1) misdemeanor of operating a vehicle under suspension; one (1) misdemeanor for criminal mischief; and one (1) misdemeanor for interfering with an officer/resisting arrest from New Haven County, Connecticut, which appeared in the employment report as follows:

11

| Offense Description | Plea |
|---|---|
| 53A-167A Interfere With Offcr/Resisting | No plea entered |

| Crime Type | Source |
|---|---|
| Misdemeanor Class A Occ:1 | Undefined |

| Offense Description | Plea |
|---|---|
| 14-215A II Opn Mv Under 14-140 Suspnsn | No plea entered |

| Crime Type | Source |
|---|---|
| Class Occ:1 | Undefined |

| Offense Day | State |
|---|---|
| 01-06-2012 | CT |

| Disposition | Disposition Date |
|---|---|
| Guilty - Plea: Guilty | 07-27-2012 |

| Charges Filed Date | Sentence |
|---|---|
| 1/6/2012 | Fine: $150.00 |

| Offense Description | Plea |
|---|---|
| 53A-128D <$500 On Revoked Credit Card | No plea entered |

| Crime Type | Source |
|---|---|
| Misdemeanor Class A Occ:1 | Undefined |

| Offense Day | State |
|---|---|
| 10-12-2011 | CT |

| Disposition | Disposition Date |
|---|---|
| Guilty - Plea: Guilty | 06-26-2012 |

| Charges Filed Date | Sentence |
|---|---|
| 4/4/2012 | Unconditional Discharge |

| Offense Description | Plea |
|---|---|
| 53A-103 Burglary 3Rd Deg | No plea entered |

| Crime Type | Source |
|---|---|
| Felony Class D Occ:1 | Undefined |

| Offense Day | State |
|---|---|
| 10-12-2011 | CT |

Disposition

Guilty - Plea: Guilty

Charges Filed Date

4/4/2012

Disposition Date

06-26-2012

Sentence

4 Years Jail, Execution Suspended,
Probation 3 Years - A Probation Review
Was Disposed Of On 10/28/2014,
Probation Was Continued Committed To
Department Of Corrections (Execution
Suspended) Probation Ordered

Offense Description

53A-128D <$500 On Revoked Credit
Card

Crime Type

Misdemeanor Class A Occ:1

Offense Day

10-11-2011

Disposition

Guilty - Plea: Guilty

Charges Filed Date

4/4/2012

Plea

No plea entered

Source

Undefined

State

CT

Disposition Date

06-26-2012

Sentence

Unconditional Discharge

Offense Description

53A-103 Burglary 3Rd Deg

Crime Type

Felony Class D Occ:1

Offense Day

10-11-2011

Plea

No plea entered

Source

Undefined

State

CT

13

| | |
|---|---|
| Offense Day | State |
| 04-03-2022 | CT |
| | |
| Disposition | Disposition Date |
| Status: Rearrest Ordered 9/19/2022 | Not provided |
| | |
| Charges Filed Date | Sentence |
| 4/3/2022 | Not provided |
| | |
| Offense Description | Plea |
| 53A-117 Criminal Mischief 3Rd Deg | No plea entered |
| | |
| Crime Type | Source |
| Misdemeanor Class B Occ:1 | Undefined |
| | |
| Offense Day | State |
| 04-03-2022 | CT |
| | |
| Disposition | Disposition Date |
| Status: Rearrest Ordered 9/19/2022 | Not provided |
| | |
| Charges Filed Date | Sentence |
| 4/3/2022 | Not provided |
| | |
| Offense Description | Plea |
| 53A-103 Burglary 3Rd Deg | No plea entered |
| | |
| Crime Type | Source |
| Felony Class D Occ:1 | Undefined |
| | |
| Offense Day | State |
| 04-03-2022 | CT |
| | |
| Disposition | Disposition Date |
| Status: Rearrest Ordered 9/19/2022 | Not provided |
| | |
| Charges Filed Date | Sentence |
| 4/3/2022 | Not provided |

14

| | |
|---|---|
| Disposition | Disposition Date |
| Guilty - Plea: Guilty | 06-26-2012 |
| Charges Filed Date | Sentence |
| 4/4/2012 | 4 Years Jail, Execution Suspended, Probation 3 Years - A Probation Review Was Disposed Of On 10/28/2014, Probation Was Continued Probation With Special Conditions |

| | |
|---|---|
| Offense Description | Plea |
| 53A-128C(A) Conspiracy To Commit Credit Card Theft | No plea entered |
| Crime Type | Source |
| Misdemeanor Class A Occ:1 | Undefined |
| Offense Day | State |
| 10-11-2011 | CT |
| Disposition | Disposition Date |
| Guilty - Plea: Guilty | 06-26-2012 |
| Charges Filed Date | Sentence |
| 4/4/2012 | Unconditional Discharge |

| | |
|---|---|
| Offense Description | Plea |
| 53A-103 Burglary 3Rd Deg | No plea entered |
| Crime Type | Source |
| Felony Class D Occ:1 | Undefined |
| Offense Day | State |
| 10-11-2011 | CT |

| | |
|---|---|
| Disposition | Disposition Date |
| Guilty - Plea: Guilty | 06-26-2012 |
| Charges Filed Date | Sentence |
| 4/4/2012 | 4 Years Jail, Execution Suspended, Probation 3 Years - A Probation Review Was Disposed Of On 10/28/2014, Probation Was Continued Committed To Department Of Corrections (Execution Suspended) Probation Ordered |

15

50.     The criminal convictions reported by Defendant about Plaintiff to Turn Technologies ***do not*** belong to Plaintiff.

51.     Plaintiff has never been charged with or convicted of a crime in his life.

52.     A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male, Jesus I. Santiago ("Convicted Felon Santiago").

53.     Had Defendant actually consulted or obtained the widely available underlying public court records regarding the convictions, it would have seen obvious discrepancies between Convicted Felon Santiago and Plaintiff.

54.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Santiago include the following:

(a)     Plaintiff's legal name is "**Jesus Santiago Jr.**" (no middle name and Jr. suffix) and the criminal records belong to a "**Jesus I. Santiago**" (without suffix and middle initial "I") which is both clear on the face of the employment report and in the widely available public records from New Haven County, Connecticut.

(b)     Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is **November 15, 1992**, yet the underlying public court records indicate that Convicted Felon Santiago's date of birth is **June 3, 1992;**

16

(c)     Plaintiff has only ever resided in Florida and Illinois, which is confirmed and clearly indicated on the face of the subject employment report, yet the underlying public court records regarding the multiple criminal convictions indicate that Convicted Felon Santiago resided in Waterbury, Connecticut at the time he committed the offenses; and,

(d)     Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Felon Santiago.

55.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Turn Technologies.

56.     Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different middle name and suffix than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

57.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Turn Technologies inaccurate information about Plaintiff,

Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Trash Butler Terminates Plaintiff's Job

58.    On or about January 6, 2023, Plaintiff was getting ready for work when he was notified that he was terminated immediately as a direct result of the misdemeanor and felony convictions reported by Defendant.

59.    Plaintiff contacted Trash Butler to better understand why he was being terminated and they responded that "unfortunately, due to the information in your background check, we are no longer able to provide employment to you at this time."

60.    Plaintiff was confused by the representative's comment, as he had never been convicted of a felony and he had been cleared to work by Trash Butler back in August 2022.

61.    Despite his confusion Plaintiff attempted to advocate for himself.

62.    Eventually, on or about January 24, 2023, Plaintiff was able to obtain a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Santiago, were published in the employment report sold about Plaintiff to Trash Butler.

63.    Plaintiff contacted Trash Butler and informed them that he has never lived in Connecticut, that he is not Convicted Felon Santiago, that he does not have

a middle name with the initial I, that he has a different social security number and date of birth from that of Convicted Felon Santiago.

64. Plaintiff explained that the serious criminal convictions of Convicted Felon do not belong to him.

65. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Doe's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on his future.

66. Specifically, Defendant matched Plaintiff and Convicted Felon Santiago and published the criminal records of Convicted Felon Santiago onto the employment report about Plaintiff and sold that report to Turn Technologies who included the criminal records information in the report it sold to Plaintiff's employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Turn Technologies but Defendant failed to perform even a cursory review of such information.

67. As a direct result of Defendant's grossly inaccurate reporting, Plaintiff lost his job and has been unable to provide for the mother of his child and his four-year old son, which caused added strain to his family.

68. Additionally, the mother of his child was forced to work overtime to pay bills, and Plaintiff was forced to get on unemployment in order to put food on

the table and make ends meet. It took Plaintiff several months for his unemployment to be approved.

69.    Despite receiving unemployment, Plaintiff and his family have been only able to scrape by while bills are going unpaid.

70.    Even further, Plaintiff's loss income due to Defendant's inaccurate reporting has made Plaintiff unable to make payment on outstanding loans, causing Plaintiff to be late or on default and damaging his creditworthiness.

71.    Plaintiff attempted to follow up with Trash Butler and hoped that his job would be reinstated, however, Trash Butler would not reinstate Plaintiff.

72.    Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Trash Butler formed a negative opinion about Plaintiff and/or moved on to fill his vacancy.

73.    Defendant's false report cost Plaintiff his job and means to provide for his family.

74.    Due to Defendant's unreasonable procedures and despite Plaintiff's continued efforts to seek employment, Plaintiff was unable to find consistent fulltime employment until May 6, 2024.

75.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address.

Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

76.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

77.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

78.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

79.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

81.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

82.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

83.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.  Determining that Defendant negligently and/or willfully violated the FCRA;

ii.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 31st day of May 2024,

CONSUMER ATTORNEYS

*/s/Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorneys for Plaintiff*
*Jesus Santiago Jr.*