# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JESUS SANTIAGO, JR.**,

      Plaintiff,

v.                             Case No: 8:24-cv-01330-WFJ-AAS

**NENO RESEARCH, INC.**,

      Defendant.

_____/

## ORDER

Before the Court is Defendant Neno Research's Motion to Compel Arbitration, Doc. 24. Plaintiff Jesus Santiago, Jr. has responded, Doc. 31, and Defendant has replied, Doc. 34. Upon careful consideration of the filings, Defendant's Motion is denied.

## BACKGROUND

Defendant's Motion requires the Court to decide whether Neno, as a non-signatory to an arbitration agreement, can compel arbitration. Neno is attempting to compel arbitration as a non-signatory because it acted as a "data furnisher" to Turn Technologies ("Turn")—the company with which Plaintiff agreed to (and did) arbitrate. Doc. 24 at 10–11.

1

Plaintiff brings this action pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b). Doc. 1 at 21. Mr. Santiago alleges that furnisher Neno "violated 15 U.S.C. § 1681e(b) by failing to establish or to 'follow reasonable procedures to assure maximum possible accuracy' in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same." *Id.* at 22.

Plaintiff worked for Trash Butler, which ultimately terminated his employment based on the background check report provided by Turn. *Id.* at 10–11, 18. The background check erroneously stated that Plaintiff committed various crimes, including burglary, conspiracy to commit credit card theft, operating a vehicle under suspension, criminal mischief, and resisting arrest. *Id.* at 11. Turn mistakenly provided background check information for a man with the same name as Plaintiff, but not Plaintiff. *Id.* at 16. In reality, Plaintiff has never been charged with or convicted of any crime. *Id.*

In connection with the background check, Plaintiff consented to Turn's Terms & Conditions, which included the arbitration agreement. Doc. 24 at 16–18. Plaintiff and Turn did in fact arbitrate a claim brought by Plaintiff under the FCRA, identically alleging that Turn violated section 1681e(b) by failing to follow reasonable procedures to assure accuracy in the preparation of the employment report. *Id.* at 9–11. The arbitrator found in favor of Turn, concluding that Mr.

2

Santiago did not produce sufficient evidence that Turn negligently or willfully failed to use reasonable procedures to assure the accuracy of the information in the background report in violation of the FCRA. Doc. 25-9 at 2. The district court confirmed the arbitrator's award and entered judgment for Turn. Doc. 24 at 12–13.

Plaintiff now brings this FCRA lawsuit against Turn's data furnisher Neno, and Neno moves to compel arbitration. *See generally* Docs. 1, 24. Neno first argues that an arbitrator, not the Court, should resolve whether this dispute is arbitrable. Doc. 24 at 18–23. If the Court does, however, decide arbitrability, Neno contends it may compel arbitration either under the doctrine of equitable estoppel or because Neno is a beneficiary under Turn and Plaintiff's agreement. *Id.* at 26–31. Plaintiff responds that, first, it is improper for an arbitrator to decide the arbitrability of this case when the existence of an arbitration agreement between these parties is at issue. Doc. 31 at 2. Further, the agreement between Plaintiff and Turn intended no benefit to Neno, so Neno is not a beneficiary empowered to compel arbitration. *Id.* at 7–9. Nor is Neno a "beneficiary" as that term is defined and used in the arbitration agreement. *Id.* at 9–13. Lastly, equitable estoppel is inapplicable because Plaintiff only agreed to arbitrate with Turn, not Neno. *Id.* at 13–14. For the reasons explained below, the Court will decide arbitrability, and finds that neither equitable estoppel nor beneficiary enforcement of an arbitration agreement applies in this case. Defendant's Motion to Compel Arbitration is denied.

3

## LEGAL STANDARD

Motions to compel arbitration are reviewed under a "summary judgment-like" standard. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). A district court may decide as a matter of law whether parties entered into an arbitration agreement if there is no genuine dispute of material fact concerning the formation of the agreement. *Bazemore*, 827 F.3d at 1333. The Court may consider matters outside the pleadings, and views all facts in a light most favorable to the nonmovant. *Hearn*, 992 F.3d at 1215 n.3; *see also Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785–86 (11th Cir. 2008).

If parties to an enforceable arbitration agreement governed by the Federal Arbitration Act dispute the applicability of the agreement, that inquiry is guided by the federal substantive law of arbitrability. *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (citations omitted). That determination of whether a matter is covered by the language of an arbitration clause "must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* (citation and internal quotation marks omitted). But "[b]ecause arbitration is a matter of contract, [] the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted). Whether an arbitration agreement exists between parties, on the

4

other hand, is determined by state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Specifically, "[t]he issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (citation omitted).

## DISCUSSION

Since the parties dispute whether a valid arbitration agreement exists between them, the Court will decide arbitrability rather than an arbitrator. In so doing, the Court finds that Neno cannot compel arbitration either under the doctrine of equitable estoppel or as a third-party beneficiary.

## I. The Court, rather than an arbitrator, should decide the arbitrability of this dispute.

Defendant argues that an arbitrator, rather than the Court, should decide the gateway question of whether Neno can enforce the arbitration agreement. Doc. 24 at 18–23. Defendant argues that Turn's arbitration agreement has delegated the issue of arbitrability to the arbitrator because the agreement states that it will be governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA Rules"), which provide that an arbitrator has the power to decide questions of

arbitrability. *Id.* at 19–20. Plaintiff responds that "[r]emarkably, Defendant invites the Court to send this case to arbitration without first determining whether a valid agreement to arbitrate between Plaintiff and Defendant even exists[.]" Doc. 31 at 2.

Parties to an arbitration agreement may send threshold questions of arbitrability to an arbitrator when they have agreed to do so. *See First Options*, 514 U.S. at 943. Both the Supreme Court of Florida and the Eleventh Circuit have specifically ruled that "incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability." *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 704 (Fla. 2022); *accord Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). As such, arbitrability issues amongst parties who have incorporated the AAA Rules into their arbitration agreements are delegated to an arbitrator.

This rule, however, applies to *parties* to an arbitration agreement. Both the Eleventh Circuit and the Florida Fourth District Court of Appeal have also ruled that, notwithstanding an arbitration agreement that incorporates the AAA Rules, it is improper for an arbitrator to decide threshold issues of arbitrability when the parties dispute whether an arbitration agreement exists between them.

In *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1113, 1117 (11th Cir. 2020) top distributors for a "global nutrition company," Herbalife, attempted to compel the arbitration of claims brought against them by subordinate distributors at Herbalife. The subordinate distributors complained that Herbalife and the top distributors ran an ongoing enterprise, essentially forcing subordinate distributors to attend expensive events and buy Herbalife products in the hopes of one day achieving success at the company. *Id.* at 1115. Some of the subordinate distributors' agreements with Herbalife contained arbitration clauses, some did not. *Id.* at 1116. None of the subordinate distributors' agreements, however, provided for arbitration between the subordinate distributors and the top distributors. *Id.* at 1117–18. The agreements only provided for arbitration between the signatory distributor and Herbalife. *Id.* So, the court rejected the top distributors' argument that an arbitrator should decide the threshold issue of whether the subordinate distributors agreed to arbitrate their claims against the top distributors. *Id.* at 1118. Although the AAA Rules governed the arbitration clauses at issue, "the aggrieved distributors have not agreed to anything with the top distributors" because there was no contract between them. *Id.* Consequently, "the district court was correct to resolve the motion to compel arbitration instead of immediately sending it to an arbitrator." *Id.*

Similarly, in *Lepisto v. Senior Lifestyle Newport Ltd. P'ship*, 78 So. 3d 89, 90 (Fla. 4th DCA 2012), Nancy Lepisto enrolled her husband in an assisted living

7

facility by executing a contract that provided she agreed to act as his "Financially Responsible Party" and/or the "Resident's Representative." At issue in the case was in which capacity Mrs. Lepisto signed the agreement—only individually as the financier or on behalf of Mr. Lepisto—because it contained an arbitration addendum the facility sought to enforce after Mr. Lepisto was injured on the property. *Id.* at 91–92. She held durable power of attorney when she executed the contract, and her husband did not personally sign, but the court concluded based on the construction of the contract that she signed only in her individual capacity as the financially responsible party. *Id.* at 90–92. The facility attempted to argue that an arbitrator, rather than the court, should decide whether the Lepistos executed the arbitration agreement because of the AAA Rules incorporated into the contract. *Id.* at 93. But the court explained that "the parties dispute[d] whether and in what capacity Jack and Nancy Lepisto entered into the [c]ontract," so it was for the court, not an arbitrator, to decide in the first instance whether the parties assented to an agreement. *Id.*

Likewise here, Mr. Santiago disputes whether he is subject to an arbitration agreement with Neno. Doc. 31 at 5. Mr. Santiago agreed to, and did, arbitrate with Turn, but Turn is not the Defendant in this case. Doc. 24 at 11. Just as in *Lavigne*, where the non-signatory top distributors attempted to compel arbitration pursuant to the subordinate distributors' agreements with Herbalife, non-signatory Neno

8

attempts to compel arbitration pursuant to Mr. Santiago's agreement with Turn. *See* 967 F.3d at 1118. And just as in *Lepisto*, where Mrs. Lepisto argued she signed the contract only as the financially responsible party and not as Mr. Lepisto's representative, Mr. Santiago disputes that he is even a party to an arbitration agreement with Neno. *See* 78 So. 3d at 91–93.  In both *Lavigne* and *Lepisto*, the courts found that arbitrators should not decide the threshold questions of arbitrability, notwithstanding incorporation of the AAA Rules into the contracts, because the existence of an arbitration agreement between the parties was at issue. 967 F.3d at 1118; 78 So. 3d at 93. Here, because Mr. Santiago also "ha[s] not agreed to anything with [Neno]" and disputes whether an agreement exists between them, this Court will decide arbitrability "instead of immediately sending it to an arbitrator." *Lavigne*, 967 F.3d at 1118; *accord Lepisto*, 78 So. 3d at 93.

## II.     Neno cannot compel arbitration.

Neno cannot compel arbitration under the doctrine of equitable estoppel because Plaintiff's claims do not rely on the terms of Plaintiff and Turn's contract, nor does Plaintiff allege that Turn and Neno engaged in concerted misconduct. Neno also cannot compel arbitration as a third-party beneficiary because it is not a "beneficiary" as that term is used in Plaintiff and Turn's arbitration agreement, nor is Neno an actual intended beneficiary of the contract.

**A. Neno cannot compel arbitration under the doctrine of equitable estoppel.**

Neno argues that it can compel arbitration under the doctrine of equitable estoppel because Plaintiff raised allegations of "substantially interdependent and concerted misconduct" by Neno and Turn, which would be a basis for a non-signatory to compel arbitration in Florida. Doc. 24 at 27. Plaintiff's response relies on *Kroma Makeup*, which explains that a non-signatory cannot invoke equitable estoppel to compel arbitration when the arbitration clause at issue specifies that only the parties to the agreement will be required to arbitrate. Doc. 31 at 13; 845 F.3d at 1354–57. In other words, even if a non-signatory could access an arbitration clause via equitable estoppel, it is inequitable to allow it when the clause limits its scope to just the parties. *Kroma Makeup*, 845 F.3d at 1355. Because Plaintiff never agreed to arbitrate with Neno, Plaintiff argues, compelling arbitration would be inequitable. Doc. 31 at 14.

In Florida, a non-signatory to an arbitration agreement can rely on equitable estoppel to compel arbitration in two situations. First, equitable estoppel applies when the signatory to a contract containing an arbitration clause relies on the terms of the contract to bring its claims against the non-signatory. *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944–45 (Fla. 1st DCA 2004) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). Second, equitable estoppel applies

when the signatory to a contract containing an arbitration clause alleges "substantially interdependent and concerted misconduct" between a non-signatory and one or more signatories to the agreement. *Id.* at 944. The Court will address each of these circumstances in turn.

### i. Mr. Santiago's claim does not rely on the terms of his background check contract with Turn.

As to the first circumstance in which equitable estoppel may be invoked, the signatory must truly rely on the underlying agreement to assert its claims. *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 646–47 (Fla. 3d DCA 2014). "A simple but-for relationship [between the claims and the contract] does not constitute the actual dependence on the underlying contract that equitable estoppel requires." *Id.* at 647 (citation and internal quotation marks omitted). That is, a signatory plaintiff's claim must "raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* (citation omitted). After all, "the lynchpin for equitable estoppel is equity," and the purpose of the doctrine is to prevent a plaintiff from relying on a contract to bring its claim, but avoiding a provision of the contract that requires arbitration. *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds sub nom.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

Neno does not try to argue that equitable estoppel applies because Plaintiff's claim depends on "reference to or construction of" the underlying background check contract itself. *See* Doc. 34 at 4; *Allscripts*, 158 So. 3d at 647. The Court need not expound on the point except to say that it agrees. Plaintiff's only claim is brought pursuant to the Fair Credit Reporting Act. Doc. 1 at 21–22. It alleges that Neno violated the FCRA by failing to use reasonable procedures to assure the accuracy of the consumer information that Neno furnished for Mr. Santiago's background report. *Id.* at 22. This allegation, of inadequate information-collection procedures, requires no "reference to or construction of" the contract between Mr. Santiago and Turn. *See Allscripts*, 158 So. 3d at 647. In other words, Plaintiff does not seek to enforce one provision of the contract while repudiating the arbitration clause. *See In re Humana*, 285 F.3d at 976. As such, equitable estoppel in the situation of contractual reliance is inapplicable.

### ii.    Mr. Santiago's claim does not allege "substantially interdependent and concerted misconduct" between Neno and Turn.

As to the second circumstance in which equitable estoppel may be invoked, the cases finding "concerted misconduct" between signatories and non-signatories generally contain allegations of some scheme among defendants. In *MS Dealer*, cited by Defendant to support the proposition that Turn and Neno's conduct is inseparable, the plaintiff claimed that signatory and non-signatory defendants

colluded to excessively charge her for the purchase of a vehicle and accompanying service contract. 177 F.3d at 944–45. The court found that both situations warranting equitable estoppel were present: the plaintiff's claims all presumed the existence of the excessive price in the purchase contract, and the plaintiff's claims all involved the same facts showing the dealership and financing entities conspired to defraud her. *Id.* at 947–48. Accordingly, the court compelled arbitration. *Id.* at 948.

Also consider *Pro. Consulting Servs. S.A.S. v. Inmigracion Pro, LLC*, No. 23-cv-22055-ALTMAN/Reid, 2024 WL 4103919 (S.D. Fla. Sept. 6, 2024), cited in Defendant's reply for the proposition that "concerted action estoppel" applies when signatory and non-signatory defendants exchange information for their economic benefit. Doc. 34 at 4. The plaintiffs there were an immigration law firm and the consulting firm it used to acquire leads on potential clients who might want immigration services. *Inmigracion Pro*, 2024 WL 4103919, at *1. The plaintiffs alleged that one of the defendants, an immigration legal services competitor, began to solicit business away from the plaintiffs. *Id.* at *2. The plaintiffs alleged this happened because their client information was stolen and sold by a man named Mr. Marin—the shareholder of another company (InteRedes) the plaintiffs had enlisted to help gather potential client data. *Id.* Although the defendants were not themselves signatories to any arbitration agreement at issue, the court compelled arbitration because signatory Mr. Marin allegedly provided the information to the defendants

for both his and their economic benefit. *Id.* at *8. "And it's precisely this sort of concerted (or collusive) activity between signatories (InteRedes and Marin) and non-signatories (the Defendants) that justifies the application of equitable estoppel." *Id.*

Florida state cases evince similar factual scenarios. In *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 967 (Fla. 3d DCA 2010), one member (Jackson Square) of a development project brought claims against other members. Jackson Square essentially alleged that the other members failed to treat it as an equal partner in violation of their agreement to do so, and that the other members conspired to defraud Jackson Square by concealing other contracts from it and preventing it from profiting equally. *Id.* at 968–69. The court compelled arbitration because Jackson Square's claims against both the signatories and non-signatories to the arbitration agreement arose from the same facts and concerted conduct among them. *Id.* at 970.

In *Shetty v. Palm Beach Radiation Oncology Assocs.*, 915 So. 2d 1233, 1234 (Fla. 4th DCA 2005), a shareholder doctor at Palm Beach Radiation Oncology Associates ("PBRO") filed suit against a fellow doctor, Dr. Shetty, and his wife, who handled the billing for PBRO. The complaint alleged that the pair conspired to engage in improper billing practices and misappropriate funds. *Id.* The claims against Dr. Shetty proceeded to arbitration as he was a party to an arbitration agreement, although his wife was not. *Id.* The court also compelled arbitration for her, though, reasoning that all asserted claims required the same factual

determinations as to whether Mrs. Shetty was overpaid for her services and had engaged in improper billing practices. *Id.* at 1235.

Lastly, and slightly differently, is Neno's citation to *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285 (S.D. Fla. 2016), for the proposition that inextricably intertwined allegations against a signatory and non-signatory warrant equitable estoppel. Doc. 24 at 28. The plaintiff there brought claims against Steri-Clean and its co-owner. *Dimattina*, 195 F. Supp. 3d at 1287. Steri-Clean was a franchisor of a system for repairing properties affected by hoarding. *Id.* The complaint alleged, in part, fraudulent inducement and a breach of the franchise agreement following the plaintiff's failed business operations for Steri-Clean. *Id.* The court compelled arbitration for the co-owner, though not a party to the arbitration agreement, because the claims against him and Steri-Clean were "one and the same." *Id.* at 1292. The complaint never alleged that the co-owner operated separately from Steri-Clean; the owner and the entity's actions were inextricably intertwined. *Id.*

The facts in this case are distinguishable from the above cases. Mr. Santiago does not claim that Turn and Neno colluded or conspired against him in any way. Plaintiff makes no claim that Neno and Turn worked together to defraud him under a contract, or worked together to steal information he owned and use it to improve their business economics while harming his. *See MS Dealer*, 177 F.3d at 947–48;

15

*Inmigracion Pro*, 2024 WL 4103919, at *8. Mr. Santiago does not contend that Neno and Turn conspired to hide valuable contracts and profits from him, or to engage in improper billing and misappropriation of funds. *See Kolsky*, 28 So. 3d at 970; *Shetty*, 915 So. 2d at 1235. Nor does Plaintiff assert that Neno and Turn's actions were indistinguishable from each other, like those of a business entity and its owner. *See Dimattina*, 195 F. Supp. 3d at 1292. Rather, Plaintiff asserts that Neno had to gather information on "Jesus Santiago" to include in a criminal background report, which it then had to *sell* to Turn. Doc. 1 at 10–11. In Neno's own words, it was a "data furnisher" to Turn. Doc. 24 at 10. These are two distinct steps that cannot be described as "inextricably intertwined." Indeed, Plaintiff's allegations now concern the sufficiency of Neno's information-gathering procedures, rather than Turn's, which likely yields a separate set of facts. In sum, Plaintiff does not allege fraudulent "concerted misconduct" between signatory Turn and non-signatory Neno. Nor does Plaintiff allege that Neno and Turn engaged in indistinguishable conduct. Accordingly, equitable estoppel in the situation of concerted misconduct is inapplicable.

The Court briefly notes that Plaintiff's argument concerning *Kroma Makeup* is not particularly applicable or persuasive in this case. *Kroma Makeup* provides that even if a non-signatory could access an arbitration clause via equitable estoppel, it is inequitable to allow same when the clause at issue specifies that only the parties

to the agreement will be required to arbitrate. 845 F.3d at 1354–57. Because the Court has found that Neno cannot access the arbitration clause via equitable estoppel, *Kroma Makeup* need not be discussed. In conclusion, Neno cannot compel arbitration using the doctrine of equitable estoppel.

**B. Neno cannot compel arbitration as a beneficiary.**

Further, Neno is neither a "beneficiary" as that term is used in Plaintiff and Turn's agreement, nor is Neno an intended third-party beneficiary entitled to enforce the arbitration provision under Florida law.

**i.   Neno is not a beneficiary as described by the arbitration agreement's terms.**

Neno argues that it can enforce the arbitration clause outright as a "beneficiary," as that term is used in the clause. Doc. 24 at 28–31. Neno's argument relies on the dictionary definition of "beneficiary" as one who receives an advantage from something. *Id.* at 29. Neno is allegedly a beneficiary because it charged Turn a fee for furnishing "Jesus Santiago's" criminal records, and thereby "received a financial benefit from the screening Services Turn provided Plaintiff under the Terms." *Id.* at 30. Plaintiff responds that a reasonable reading of the arbitration agreement does not include Neno as a beneficiary. Doc. 31 at 9–13.

Plaintiff and Turn's arbitration clause provides in pertinent part:

You and Turn agree to arbitrate all disputes and claims between us that arise out of, relate to, or are associated with the Services, the Sites or Turn. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to, all claims arising out of or relating to any aspect of our relationship, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, that arose either before or during this or any prior agreement, or that may arise after termination of these Terms, including claims over marketing or communications by or on behalf of Turn or claims involving the security, transfer, or use of data about you. . . . References to "Turn", "you", and "us" include our respective predecessors in interest, successors, and assigns, as well as our respective past, present, and future subsidiaries, affiliates, agents, employees, and all authorized or unauthorized users or beneficiaries of Services or Sites under this or prior agreements between us.

Doc. 25-4 at 19.

Plaintiff explains that "beneficiaries of [Turn's] Services or Sites" are purchasers or users of the background checking services Turn provides, such as employers. Doc. 31 at 11. Turn's Terms & Conditions define Turn's "Services" as "the content, worker screening, worker sourcing, or other products and services" that Turn provides. Doc. 25-4 at 2. Turn's "Sites" are the platforms where these consumer reports are made available by Turn: "via application programming interfaces or otherwise, at www.turn.ai, through the Turn mobile application or through any other technology platforms . . . owned or operated by Turn." *Id.* Turn explains that, "[a]s part of the Sites and Services, Turn provides a platform for emerging and established companies across multiple industries who have contracted

18

to use or test Turn's Services ("Partners") to procure Consumer Reports . . . for independent contractors, agents, volunteers, or other contingent workers . . . for employment purposes." *Id.*

The Court agrees with Plaintiff that, based on the plain language of this agreement, beneficiaries under this arbitration clause are those who purchase, receive, or otherwise use the worker screening reports that Turn prepares for potential employees. Doc. 31 at 11; *see Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1208–10 (11th Cir. 2021) (interpreting the plain language of an arbitration agreement to exclude claims brought against a non-signatory). Neno cannot reasonably be understood as a user or beneficiary of the background check services Turn provided to verify "Jesus Santiago's" continued employment. Neno of course benefitted from its own, separate arrangement with Turn to receive payment for the furnishing of relevant court records. But, again, Neno is not an anticipated user or beneficiary of a contract for a background report on "Jesus Santiago."

Notably, Turn's arbitration agreement contains a requirement similar to the one in *Calderon*, cited *supra*, that contributed to the court's decision to deny arbitration. In *Calderon*, the plaintiff booked a rental car through Orbitz, which required agreeing to arbitration before completing the reservation. 5 F.4th at 1206–07. The plaintiff had no complaints about Orbitz; rather, his problem arose with the rental car company from which he actually borrowed the car, Sixt. *Id.* at 1207–08.

19

Sixt entered a separate contract with the plaintiff that contained no arbitration clause, so it sought to compel arbitration via Orbitz's agreement with the plaintiff. *Id.* As part of its rationale for why arbitration should not be compelled, the court explained how Orbitz's arbitration agreement required a customer with a complaint to first attempt to resolve it with Orbitz. *Id.* at 1209–10. Sixt's claim, therefore, could not fall within the scope of the arbitration agreement, as it would be nonsensical for Orbitz to try to resolve a customer's dispute with Sixt. *Id.* at 1210. Here, too, Turn's arbitration agreement provides that "arbitration may be commenced only if you and Turn do not reach an agreement to resolve the claim during the Informal Resolution Period." Doc. 25-4 at 21. As in *Calderon*, it would be nonsensical for Turn to try to resolve Plaintiff's dispute with Neno—a separate company with its own authority. In sum, the plain language of the arbitration agreement indicates that Neno is not a beneficiary of Turn's Services within the scope of the arbitration clause, and consequently cannot compel arbitration.

### ii.   Neno is not a third-party beneficiary of the agreement.

Neno states that it only seeks to compel arbitration pursuant to the agreement's terms defining beneficiaries of Turn's Services, yet it advances arguments that it benefitted from the agreement as a whole. Doc. 24 at 28–31. If Neno falls within an identified class of persons intended to benefit from the agreement, Neno argues, it

can enforce the arbitration provision as a third-party beneficiary under Florida law. *Id.* Plaintiff responds that parties to a contract must agree upon formation to confer benefits on a third party in order for that party to have rights of action under the contract as a third-party beneficiary. Doc. 31 at 7. Plaintiff and Turn's agreement made no mention of Neno, so it cannot be a beneficiary with enforceable rights. *Id.*

In Florida, "a nonsignatory may invoke an arbitration provision where the nonsignatory falls within an identified class of persons expressly intended to benefit from the arbitration agreement, i.e., a third-party beneficiary." *Olson v. Florida Living Options, Inc.*, 210 So. 3d 107, 110 (Fla. 2d DCA 2016) (citing *Henderson v. Idowu*, 828 So. 2d 451, 452–53 (Fla. 4th DCA 2002)). The parties to a contract must agree upon formation to confer benefits on a third party for that party to have rights of action under the contract. *Liu v. Wu*, No. 23-21541-CV-WILLIAMS, 2024 WL 516960, at *5 (S.D. Fla. Jan. 5, 2024) (citing *MS Dealer*, 177 F.3d at 947). That is, "a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Id.* (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005)). If the parties to the contract did not intend to benefit a third party, the third party's benefit is merely incidental, and they have no legally enforceable rights in the contract. *Id.* The contracting parties' intent to benefit the third party must be

clear. *Id.* In the absence of a specific mention of the third party, it would be difficult for that party to establish that it was an intended beneficiary. *Id.*

Here, Neno is not an intended beneficiary of the agreement between Plaintiff and Turn. There is no indication that Plaintiff and Turn agreed, upon the formation of their contract, that they directly intended to benefit Neno. *See Liu*, 2024 WL 516960, at *5. Nor is Neno included within an identified class of persons intended to benefit from Plaintiff's agreement with Turn for its background check services, as discussed *supra*. As mentioned above, Neno benefitted from its own arrangement with Turn to furnish relevant court records. But Neno and Turn's agreement was purely incidental to Turn and Plaintiff's agreement, the primary purpose of which was to prepare a background check report. As such, Plaintiff and Turn did not intend to confer any benefit on Neno. Nor is Neno part of a group intended to benefit from a background check on "Jesus Santiago." Neno, consequently, is not a third-party beneficiary with enforceable rights in the contract. *See id.* As such, Neno cannot compel arbitration as a third-party beneficiary.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Compel Arbitration, Doc. 24, is **DENIED**. Defendant's response to Plaintiff's Complaint is due within fourteen days.

**DONE** and **ORDERED** at Tampa, Florida, on October 30, 2024.

_/s/ William F. Jung_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record