**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JESUS SANTIAGO, JR.,

Plaintiff,

v. Case No: 8:24-cv-1330-WFJ-AAS

NENO RESEARCH, LLC, and
HIRERIGHT, LLC,

Defendants.
______________________________________/

# ORDER

Before the Court is Defendant HireRight, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint, Dkt. 127, Plaintiff's response in opposition, Dkt. 133, and Defendant's reply, Dkt. 134. For the following reasons, the Court permits very limited jurisdictional discovery.

## BACKGROUND

This is the second lawsuit filed by Plaintiff Jesus Santiago, Jr. ("Plaintiff" or "Mr. Santiago"), seeking to hold an entity liable for certain violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). The first action was filed in March 2023 against Turn Technologies, Inc. ("Turn"). *See Santiago v. Turn Techs., Inc.*, No. 8:23-cv-674-MSS-TGW (M.D. Fla.). The district court in *Turn* compelled arbitration pursuant to an agreement, *id.* at Dkt. 10, and the arbitrator

issued an award in favor of Turn—finding Turn did not violate the FCRA. *Id*. at Dkt. 14-1. The district court then affirmed the April 2024 arbitration award. *Id*. at Dkt. 20.

In May 2024, Plaintiff filed the instant action, again alleging violations of the FCRA but this time against Defendant Neno Research, LLC ("Neno"). *See* Dkt. 1. The initial complaint, as well as the First Amended Complaint, alleged Neno violated the FCRA by providing information to Turn that "falsely portrayed Plaintiff as a convicted felon for burglary and several other misdemeanors for offenses committed between October 2011 and April 2022." Dkt. 1 at 1; Dkt. 56 at 1–2; *see* Dkt. 45 at 2. "Plaintiff's employer, Trash Butler [in Orlando, Florida], terminated Plaintiff after receiving an employment background check report from Turn[.]" Dkt. 1 ¶ 5; Dkt. 56 ¶ 5; *see* Dkt. 45 at 2.

For two years, Plaintiff and Neno have litigated this matter at every possible juncture, including an appeal of the arbitration denial, *see* Dkts. 38, 45, with no discernible movement toward resolution. This Court recently permitted Plaintiff to amend the complaint a second time to add HireRight, LLC ("HireRight") as a party defendant. Dkt. 95 (Order granting motion to amend); Dkt. 97 (Second Amended Complaint).

## ALLEGATIONS

In April 2026, Plaintiff filed a Second Amended Complaint alleging three counts, each against both HireRight and Neno. *See* Dkt. 97. In Count I, Plaintiff alleges that both Defendants, acting as one consumer reporting agency, failed to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) of the FCRA. *Id.* ¶¶ 102–109. Count II is a defamation *per se* claim under Florida law based on Defendants' publication to Turn, a third party, that Plaintiff was convicted of several felonies and misdemeanors, none belonging to Plaintiff. *Id.* ¶¶ 110–116. When Turn allegedly republished information regarding those disputed convictions to Plaintiff's employer, Trash Butler, Plaintiff lost his employment. *Id.* ¶ 115. In Count III, Plaintiff seeks to pierce the corporate veil under Florida law and "hold HireRight liable for the acts of its alter ego, Neno[.]" *Id.* ¶¶ 117–29.

Concerning the newly added HireRight, Plaintiff alleges that HireRight is a Delaware company with its principal place of business in Oklahoma and that HireRight engages in business nationwide, including Florida. *Id.* ¶ 16. Other allegations focus on HireRight's relationship to Defendant Neno: (1) Neno is a wholly owned subsidiary of HireRight; (2) Neno has no operational independence from HireRight; and (3) HireRight "deliberately operates" Neno without complying with the requirements of the FCRA. *Id.* ¶¶ 44, 45, 49. Plaintiff

realleges this verbatim in Count III seeking to pierce the corporate veil. *Id.* ¶¶ 119, 121, 126.

**MOTION TO DISMISS AND EXHIBITS**

HireRight moves to dismiss the Second Amended Complaint for lack of personal jurisdiction as well as failure to state a claim for relief. *See* Dkt. 127. In support of its motion, HireRight filed the declaration of Stephanie Morgan, as the Deputy General Counsel of HireRight, Dkt. 127-1, together with the relevant portion of the annual report (Form 10-K) filed with the Security and Exchange Commission in 2022 for HireRight Holdings Corporation, Dkt. 127-2, which is a different entity from HireRight.

Deputy General Counsel Morgan has been employed by HireRight since 2018 and works remotely from her home in Texas. Dkt. 127-1 ¶ 2. Ms. Morgan attests that HireRight is a Delaware limited liability company. *Id.* ¶ 4. Contrary to Plaintiff's allegations, Ms. Morgan avers that HireRight has its principal place of business in Nashville, Tennessee (not Oklahoma or Florida). *Compare* Dkt. 97 ¶ 16 *with* Dkt. 127-1 ¶ 4. While HireRight is registered as a *foreign* limited liability company in Florida, its registered agent for service of process in Florida "does not reflect, and is not used as, an operational office or base of operations." Dkt. 127-1 ¶ 6.

HireRight "does not maintain, own, lease, or control any office, storefront, mailing address, or telephone listing in Florida" and "does not own, lease, or control any real or personal property in Florida." *Id.* ¶ 5. HireRight "does not host or maintain any computer servers in Florida" and its "production systems and data centers relevant to its services" are in Nevada, not Florida. *Id.* ¶ 8. Of HireRight's 16 remote employees who live in Florida, none are officers or directors, and none manage Florida operations or have authority to bind HireRight to contracts in Florida. *Id.* ¶ 7.

"HireRight has never had direct contact with Mr. Santiago in Florida or elsewhere." *Id.* ¶ 9. With respect to Trash Butler, Plaintiff's former employer, HireRight has not provided it—"in Florida or anywhere"—a consumer or employment background report, screening report, or document relating to Mr. Santiago. *Id.* Nor did HireRight "receive an order from Trash Butler for any report concerning Mr. Santiago," or "prepare" or "furnish any such report" to Trash Butler. *Id.* ¶ 10. HireRight "did not communicate with Mr. Santiago or with Trash Butler in Florida regarding Mr. Santiago or otherwise direct any conduct at Florida concerning him." *Id.* ¶ 11. "Any activities by HireRight relating to consumer report generation, quality control, customer service, data processing, or decision-making associated with its services occurs at locations outside Florida. No such activities related to Mr. Santiago occurred in Florida." *Id.* ¶ 12.

Lastly, HireRight "does not own or operate facilities in Florida at which it provides services to customers" and "did not perform in-person services or on-site work in Florida related to Mr. Santiago or Trash Butler." *Id.* ¶ 13. HireRight "does not manufacture, design, or distribute goods in Florida, and the claims asserted do not relate to the use of any product in Florida." *Id.* ¶ 14.

Plaintiff did not submit a declaration or affidavit in opposition, or any other form of evidence to rebut the declaration of HireRight's Deputy General Counsel, Ms. Morgan. Plaintiff relies on its response and the allegations of the Second Amended Complaint. *See* Dkt. 133.

**APPLICABLE LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. At the outset, a court must decide whether it possesses personal jurisdiction over the parties because "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (citations omitted); *Stinson v. Memphis Light Gas & Water*, No. 24-12176, 2025 WL 3111029, at *2 (11th Cir. Nov. 6, 2025) (quoting *Posner*, 178 F.3d at 1214 n.6). Accordingly, a Rule 12(b)(2) motion must be decided before reaching issues raised in a Rule 12(b)(6) motion. *See id.* When the court lacks personal jurisdiction over a nonresident defendant, the complaint must be dismissed without prejudice. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp.

2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner*, 178 F.3d at 1214 n.6); *see also Dvoinik v. Rabl*, No. 24-10753, 2024 WL 4456270, at *2 (11th Cir. Oct. 10, 2024) (affirming lower court's dismissal of complaint without prejudice based on lack of personal jurisdiction); *Duran v. Joekel*, No. 2:23-cv-558-JES-NPM, 2024 WL 2384963, at *8 (M.D. Fla. May 23, 2024) (granting two defendants' motions to dismiss without prejudice for lack of personal jurisdiction).

The plaintiff carries the initial burden of demonstrating a *prima facie* case of personal jurisdiction over a nonresident defendant by alleging sufficient jurisdictional facts in the complaint. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citation omitted). The defendant challenges jurisdiction by filing "affidavits in support of his position." *Posner*, 178 F.3d at 1214 (quoting *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989)). The burden then shifts back to the plaintiff to prove "by affidavit the basis upon which jurisdiction may be obtained." *Id*. To the extent the allegations in the complaint are not contradicted by defendant's affidavits, the court must accept the facts alleged in the complaint as true. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A plaintiff's failure to rebut the defendant's averred denials of jurisdictional allegations with competent evidence is sufficient to negate personal jurisdiction. *See Mazer*, 556 F.3d at 1280 (affirming dismissal for this reason).

**DISCUSSION**

Jurisdiction in this case is based on both federal question and diversity of citizenship. Dkt. 97 ¶¶ 20, 21. If the federal question "aris[es] under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996) (citing *Cable/Home Commc'n v. Network Prods.*, 902 F.2d 829, 855 (11th Cir. 1990)). Because the FCRA is silent as to service of process, the forum state's long-arm statute is applied to evaluate personal jurisdiction over a nonresident defendant. *Sonnier v. Enhanced Recover Co., LLC*, No. 1:19-cv-5060-CAP-RDC, 2020 WL 13133206, at *2 (N.D. Ga. Oct. 27, 2020) (citing 15 U.S.C. §§ 1681–1681x). Federal courts also look to the state long-arm statute in diversity cases. *Posner*, 178 F.3d at 1214; *Sun Bank N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991).

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citations omitted). This two-step process first requires an analysis of whether the exercise of personal jurisdiction is appropriate under the state long-arm statute. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023) (citing *Sculptchair, Inc.*, 94 F.3d at 626).

Second, the court must determine whether sufficient constitutional due process minimum contacts exist with the state such that "the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *SkyHop Techs.*, 58 F.4th at 1222 (quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). "Only where the long-arm statute provides jurisdiction do[es] [a court] proceed to the second step and determine whether" the federal due process analysis has been met. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010) (citation omitted).[1]

**<u>Florida's Long-Arm Statute</u>**

Florida's long-arm statute permits the exercise of personal jurisdiction in two ways: general and specific jurisdiction. Fla. Stat. § 48.193 (1) (specific); § 48.193 (2) (general); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–

[1] The federal due process analysis of personal jurisdiction is itself a two-part inquiry. *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993). First, the court must consider whether the defendant engaged in minimum contacts with Florida. *Id.* (citing *Madara*, 916 F.2d at 1515–16). Second, the court examines whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* (citing *Madara*, 916 F.2d at 1517); *Trepko, Inc. v. Golden West Trading, Inc.*, No. 8:20-cv-464-CEH-JSS, 2021 WL 424347, at *7 (M.D. Fla. Feb. 8, 2021) (citing *Cronin*, 980 F.2d at 670). Both prongs of the due process analysis must be satisfied before personal jurisdiction may be asserted over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting *Madara*, 916 F.2d at 1514).

04 (11th Cir. 2015). Plaintiff maintains that HireRight is subject to both general and specific jurisdiction. Dkt. 133 at 6–9. The Court addresses each in turn.

***General Jurisdiction***

Courts in Florida have general personal jurisdiction over a nonresident defendant engaging in "substantial and not isolated activity" in Florida "whether or not the claim arises from that activity." Fla. Stat. § 48.193(2); *see Carmouche*, 789 F.3d at 1204; *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). Stated more broadly, the issue is whether HireRight's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Only in an "exceptional case" will the defendant corporation's operations render it "at home" somewhere other than its place of incorporation or its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014).

The parties agree that HireRight's place of incorporation is Delaware. *See* Dkt. 97 ¶ 16; Dkt. 127-1 ¶ 4. Plaintiff claims that HireRight's principal place of business is Tulsa, Oklahoma, Dkt. 97 ¶ 16, while HireRight states Nashville, Tennessee. Dkt. 127-1 ¶ 4. Because neither the place of incorporation nor the principal place of business is Florida, the Court must consider whether this case is "exceptional" in that HireRight's operations in Florida are "so substantial and of

such a nature as to render" it at home. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (citation omitted), *overruled in part on other grounds by Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023).

In evaluating personal jurisdiction, the Court reiterates that once Defendant HireRight produced evidence, *see* Dkt. 127-1, the burden shifted back to Plaintiff to prove by affidavit or other competent evidence of personal jurisdiction, apart from the allegations of the operative complaint. *See Posner*, 178 F.3d at 1214 (citing *Venetian Salami Co.*, 554 So.2d at 502); *Pavone v. Am. Cont. Sys., Inc.*, No. 2:24-cv-1054-KCD-NPM, 2025 WL 2977640, at *1 (M.D. Fla. Oct. 22, 2025). Plaintiff has failed to submit any evidence at all. Instead, Plaintiff wholly relies on HireRight's declaration of its deputy general counsel and the allegations of the Second Amended Complaint. *See* Dkt. 133.

Despite the failure to file any evidence, Plaintiff argues several reasons why this is an exceptional case. None are persuasive.

Plaintiff maintains that HireRight's registration in Florida as a foreign entity and designation of a registered agent in Florida bestow general jurisdiction. Dkt. 133 at 8–9. Notably, Florida law does not require an out-of-state company consent to general jurisdiction when it registers as a foreign business entity. *Waite*, 901 F.3d at 1319–22. Although foreign corporations are required to maintain an agent in Florida for service of process, designating an agent, alone, does not equate with

consent to general jurisdiction in Florida courts. *Waite*, 901 F.3d at 1321–22. As HireRight's declaration provides, HireRight appointed a registered agent for service of process in Florida, as required, "but that registration does not reflect, and is not used as, an operational office or base of operations." Dkt. 127-1 ¶ 6. Nor does HireRight have any property, ownership, lease interests, or bank accounts in Florida, or host or maintain any computer servers in Florida (only in Nevada). *Id.* ¶¶ 4–6, 8. These facts do not establish general jurisdiction. *See, e.g.*, *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1327 (M.D. Fla. 2017) (citing *Carmouche*, 789 F.3d at 1204) (finding foreign entities being registered to do business in Florida and having sales agents in Florida are insufficient grounds to confer general jurisdiction), *aff'd sub. nom. Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019); *Bryant v. Hasbro, Inc.*, No. 8:18-cv-1336-T-36CPT, 2020 WL 224513, at *4 (M.D. Fla. Jan. 15, 2020) (citing *Hinkle*, 268 F. Supp. 3d at 1327) (finding nothing exceptional about selling products in Florida while the products are also allegedly sold throughout the United States).

Another reason cited by Plaintiff is that HireRight employs sixteen Florida residents who work remotely from Florida. Dkt. 133 at 8–9. Of these sixteen employees, none are officers or directors, and none manage Florida operations or have officer or signing authority. *Id.* ¶ 7. Plaintiff alleges no facts to the contrary, and Plaintiff's sole authority is distinguishable. *See id.* at 9 (citing *Aguila v.*

*RQM+LLC*, No. 23-24702-Civ, 2026 WL 194160, at *13–14 (S.D. Fla. Jan. 26, 2026)). In *Aguila*, the plaintiffs submitted a "LinkedIn profile" of a Florida employee who was listed as a vice president of marketing. 2026 WL 194160, at *13. The defendant submitted a counter affidavit stating that the former employee worked remotely from Florida but did not hold a position of executive leadership as the vice president of marketing and did not have authority to make executive-level decisions. *Id*. Further, the defendant, a Delaware corporation with its principal place of business in Pennsylvania, had no offices in Florida. The *Aguila* court found that the plaintiffs did not rebut the defendant's affidavit about the status of remote employees and dismissed the claims. *Id*. at *13–14.

Additionally, Plaintiff's simple disagreement with HireRight's declaration does not create a "disputed factual question." *See* Dkt. 133 at 9. Although Plaintiff alternatively requests that the Court permit jurisdictional discovery to determine whether HireRight is subject to personal jurisdiction, *id*. at 11–12, Plaintiff fails to show that such jurisdictional discovery is warranted to further explore the scope of the sixteen employees' roles and authority. *See id*.

"The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792(11th Cir. 2017) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982)). Where Defendant HireRight has provided

concrete evidence that specifically rebuts Plaintiff's unsupported allegations and arguments, and Plaintiff has failed to set a factual predicate for jurisdictional discovery, Plaintiff's request for jurisdictional discovery is denied. *See Dormoy v. HireRight, LLC*, No. 23-cv-2511-EMC, 2023 WL 5110942, at *6 (N.D. Cal. Aug. 9, 2023) (denying jurisdictional discovery because plaintiff "failed to provide any evidence to support" discovery requests, failed to "explain[] how discovery could be helpful, [and failed] to provide any proposed discovery" to consider).[2]

Lastly, Plaintiff's sweeping, conclusory allegation that HireRight conducts a background-screening business "throughout the United States, including" Florida, Dkt. 97 ¶ 16, does not change the outcome. Plaintiff did not plead any supporting facts showing that HireRight has any continuous contact with Florida or that it interacted at all with Plaintiff or Turn's report. By his own allegations, Plaintiff's report was furnished to Trash Butler by Turn, not HireRight, which resulted in his termination because the report falsely attributed several felony and misdemeanor convictions to Plaintiff. *Id.* ¶¶ 54–63, 78. Plaintiff never sufficiently connects HireRight to Florida. Having failed to rebut HireRight's declaration with competent evidence, Plaintiff has not proven general jurisdiction. *See Mazer*, 556 F.3d at 1280.

---

[2] Another reason to deny jurisdictional discovery is that Plaintiff's request for same is "buried" in its response. *See Mazer*, 556 F.3d at 1280–81 (affirming dismissal despite the plaintiff's request to seek jurisdictional discovery in its opposition to the motion to dismiss).

***Specific Jurisdiction***

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy[.]" *Goodyear*, 564 U.S. at 919 (citation modified). In the Eleventh Circuit, federal courts ask the following questions to determine specific jurisdiction: (1) whether the claim arises out of or relates to the nonresident defendant's forum contact, (2) whether the nonresident defendant purposely availed itself of the privilege of conducting activities within the forum state, and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355.

Florida's long-arm provision provides that a defendant submits to jurisdiction "for any cause of action arising from" one or more of nine enumerated acts. Fla. Stat. § 48.193(1)(a). Plaintiff contends subsection 2— committing a tortious act within Florida—applies here. Dkt. 133 at 6–8 (citing Fla. Stat. § 48.193(1)(a)(2)).

Plaintiff alleges that HireRight's business encompasses selling "background checks to employers and data furnishers, like Turn Technologies, who incorporate the data Defendant provides in their background checks that they furnish to employers," and the employers then make job offers or decisions, including termination. Dkt. 97 ¶ 18. Per Plaintiff's own allegations, Turn, *not HireRight*, provided the Plaintiff's report to Trash Butler, and Plaintiff was terminated based

on its falsity attributing several felony and misdemeanor convictions to Plaintiff. *Id.* ¶¶ 54–63, 78.

HireRight's declaration in opposition belies any contention that HireRight had any contacts with Florida. HireRight "has never had direct contact with Mr. Santiago in Florida or elsewhere." Dkt. 127-1 ¶ 9. HireRight has not provided to Trash Butler "in Florida or anywhere—consumer or employment background report, screening report, or other documentation relating to Mr. Santiago." *Id.* HireRight never received an order from Trash Butler for a report concerning Plaintiff, prepared such a report, or furnished such a report to Trash Butler "or to any Florida-based individual or entity." *Id.* ¶ 10. HireRight "did not communicate with either Mr. Santiago or with Trash Butler in Florida regarding Mr. Santiago or otherwise direct any conduct at Florida concerning him." *Id.* ¶ 11.

Because these averments of HireRight's Deputy General Counsel contradict the jurisdictional allegations of the Second Amended Complaint and Plaintiff submitted no sworn testimony or exhibits in opposition, the Court need not accept the alleged facts in the Second Amended Complaint as true. *See Morris*, 843 F.2d at 492. Plaintiff's reliance on *Daniel v. Concord Advice, LLC*, No. 8:19-cv-2978-T-02SPF, 2020 WL 2198204, at *4 (M.D. Fla. May 6, 2020), is misplaced. There, the plaintiff submitted counter affidavits that "directly conflict with" the defendant's affidavit. *Id.*, at *3. Here, Plaintiff did not provide any such affidavit.

The other case cited by Plaintiff, *Marcus Forbes v. Concord Advice, LLC*, No. 8:19-cv-2980-VMC-CPT, 2020 WL 3250232, at *7 (M.D. Fla. Apr. 21, 2020), is also distinguishable. The *Forbes* case, like the *Daniel* case, presented battling affidavits, unlike the instant case. *See id*. at *6. This is a failure of Plaintiff to meet the shifted burden of proof. It is fatal to the claim.

Although not raised by either party, the Court notes that this conclusion does not fun afoul of *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021). There, the Supreme Court upheld specific personal jurisdiction based on the connection between the plaintiff's claims and the defendant Ford's activities in the states where the plaintiffs were injured in separate car wrecks. *See id*. Ford sold the specific cars outside the forum states and the consumers later sold them to residents of the forum states. *Id*. at 366. Specific jurisdiction was "close enough" based on the "connection between the plaintiffs' claims and Ford's activities" in the forums. *Id*. at 371.

Unlike Ford and its cars involved in wrecks, HireRight did not prepare or disseminate the inaccurate background-check report at issue, which made its way to Turn and then Trash Butler in Florida. In short, HireRight maintains, and Mr. Santiago does not successfully dispute, that it "does not manufacture, design, or distribute" its goods in Florida. Dkt. 127-1 ¶ 14. Mr. Santiago fails to allege or demonstrate the strong connection or relationship necessary. On this record, there

is no apparent, much less the strong, connection necessary among HireRight, Florida, and the incorrect background-check report at the heart of this action to support specific personal jurisdiction.

Lastly, Plaintiff argues an alter ego theory in support of personal jurisdiction. "The alter ego theory of personal jurisdiction has traditionally been understood as an alternative to the standard two-step inquiry under Florida law [for specific jurisdiction]." *K3 Enters., Inc. v. Sasowski*, No. 20-24441-Civ, 2021 WL 8363506, at *5 (S.D. Nov. 22, 2021) (*citing Gubanova v. Mia. Beach Owner, LLC*, No. 12-22319-Civ, 2013 WL 6229142, at *3–4 (S.D. Fla. Dec. 2, 2013)). The alter ego theory exists "as a limited exception to the general two-step process of establishing long-arm jurisdiction." *Medlink Legal Sys., LLC v. QIMA Ltd.*, 794 F. Supp. 3d 1265, 1274 (S.D. Fla. 2025) (citations omitted).

"[A] court may exercise jurisdiction where the non-resident corporation is merely the alter ego of the resident entity." *Gubanova*, 2013 WL 6229142, at *4 (citing Florida law). "To prevail under the alter ego theory, the complaint must allege facts sufficient to pierce the corporate veil of the resident corporation." *Medlink*, 794 F. Supp.3d at 1274 (citations omitted). To pierce the corporate veil, the plaintiff must show that "(1) the non-resident defendant dominated and controlled the resident corporation to such an extent that the corporation's independent existence was in fact non-existent, (2) the corporate form was used

fraudulently or for an improper purpose, and (3) the fraudulent or improper use of the corporate form caused injury to the plaintiff." *K3 Enters., Inc.*, 2021 WL 8363506, at *3 (citations omitted). Applying Florida law, courts "will not easily" pierce the corporate veil. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

This "piercing the veil" alter ego theory is thinly pled "upon information and belief" and seems unlikely. In an abundance of caution, this Court permits limited jurisdictional discovery on this point only. If the assertion appears to be entirely vacuous, Plaintiff may be liable for the expense of this discovery. The parties must accomplish this within ninety (90) days of the date of this Order, and then may refile their positions on this discrete point. Defendant HireRight LLC's Motion to Dismiss Plaintiff's Second Amended Complaint, Dkt. 127, is otherwise **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, on November 4, 2026.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of record